UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANETTE NEGRETE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PETSMART, INC., a Delaware Corporation, and RANDY MOSBACHER,<br><br>　　　　　Defendants. | No. 2:13-cv-01218-MCE-AC<br><br><br>**MEMORANDUM AND ORDER** |

Plaintiff Jeanette Negrete ("Plaintiff") seeks damages from Defendants PetSmart, Inc. ("PetSmart") and Randy Mosbacher ("Mosbacher") (collectively, "Defendants") for violations of California state law.  Specifically, Plaintiff seeks relief for: (1) unpaid overtime in violation of California Labor Code sections 510 and 1198; (2) unpaid minimum wages in violation of Labor Code sections 1194, 1197, and 1197.1; (3) wages not timely paid upon termination in violation of California Labor Code sections 201 and 202; (4) unpaid meal period premiums in violation of Labor Code sections 226.7 and 512(a); (5) unpaid rest period premiums in violation of Labor Code section 226.7; (6) non-compliant wage statements in violation of Labor Code section 226(a);

///

///

(7) unpaid business expenses in violation of Labor Code sections 2800 and 2802; (8) PAGA violations of Labor Code sections 2698 through 2699.5; and (9) violations of California Business & Professions Code sections 17200 through 17207.  Presently before the Court is Defendants' Motion for Change of Venue, through which Defendants request that the Court transfer the case to the Northern District of California pursuant to the first-to-file rule.  (ECF No. 6.)  Plaintiff filed a statement of non-opposition.  (ECF No. 8.)  For the reasons set forth below, Defendants' motion is GRANTED.[1]

## BACKGROUND

Negrete Action[2]

On September 20, 2012, Plaintiff filed a Class Action Complaint against Defendants in the Superior Court of California, County of Shasta, on behalf of herself and others similarly situated.  On October 18, 2012, Plaintiff filed her First Amended Class Action Complaint.  Defendants removed the case to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  On November 26, 2012, Plaintiff moved to remand the case to state court.  The Court granted the motion on March 7, 2013.  On June 14, 2013, Defendants again removed the case from state court, based on evidence obtained during Plaintiff's deposition which, according to Defendants, shows that CAFA's jurisdictional amount in controversy is met.

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local R. 230(g).

[2] Defendants request that the Court take judicial notice of certain documents submitted in support of Defendants' Motion.  (ECF No. 6-2.)  These documents include Plaintiff's First Amended Class Action Complaint and Defendants' Notice of Removal filed in the present case.  (Id.)  These documents are part of the Court's own docket in this matter, and therefore a formal request for judicial notice is unnecessary.  However, the Court may properly take judicial notice of court records.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir.1993).  The request for judicial notice of these documents is therefore GRANTED.  Defendants also request that the Court take judicial notice of certain documents filed in the case Negrete v. PetSmart, Inc., 2:12-cv-02674-MCE-EFB, including Defendants' Notice of Removal filed October 25, 2012, Defendants' Motion to Remand filed November 26, 2012, and the Court's Order granting Defendants' Motion to Remand on March 7, 2013.  (ECF No. 6-2.)  Because the Court may take judicial notice of court records, Fed. R. Evid. 201(b), Defendants' request for judicial notice of these documents is GRANTED.

2

Plaintiff brings this action on behalf of herself and other current and former PetSmart groomers in California.

Plaintiff worked as a pet groomer at the PetSmart located in Redding, California, from June 26, 2007, to August 11, 2012.

PetSmart paid Plaintiff and her fellow groomers either an hourly wage or on commission. When PetSmart did not pay Plaintiff an hourly wage of nine dollars, she generally received about ten dollars an hour in commissions. Plaintiff alleges that while she worked for PetSmart, she and putative class members did not receive pay for all hours worked because PetSmart did not record all hours worked. Additionally, Plaintiff alleges that even though PetSmart knew or should have known that Plaintiff and putative class members were entitled to overtime compensation, she and putative class did not receive overtime wages. Plaintiff makes similar allegations with regard to minimum wages for "off-the-clock" work; meal and rest period payments; and complete and accurate wage statements. Plaintiff also alleges that she and putative class members did not receive full reimbursement for all business-related expenses and costs that Plaintiff and putative class members incurred, nor did they receive vested vacation wages earned upon termination, timely payment of wages earned upon termination, or timely payment of wages during employment. Plaintiff and putative class members allege PetSmart knew they owed Plaintiff and putative class members these wages and payments, but Plaintiff and putative class never received those wages and payments within permissible time periods.

Moore Action[3]

On May 23, 2012, Plaintiffs Danette Moore, Latresa Myers, Alanna Harrison and Alisa Valdez (collectively, "the Moore Plaintiffs") filed a putative class action in the Superior Court of California, County of Alameda, against PetSmart.

---

[3] Defendants request that the Court take judicial notice of the Class Action Complaint filed in Moore v. PetSmart, Inc., No. HG12633131, filed in California Superior Court on May 23, 2013, and the Notice of Removal of the Moore Action to the Northern District of California, No. 5:12-cv-03577-PSG. (ECF No. 6-2.) Because the Court may judicially notice court documents, Fed. R. Evid. 201(b); United States v. Bernal–Obeso, 989 F.2d at 333, the request for judicial notice is GRANTED.

1  The Moore Plaintiffs allege claims for unpaid overtime, unpaid minimum wages, unpaid
2  meal period premiums, unpaid rest period premiums, non-compliant wage statements,
3  PAGA violations, waiting time penalties, and violations of the California Business and
4  Professions Code, among other claims.  PetSmart timely removed the Moore Action to
5  the Northern District of California on July 9, 2012.
6       The parties in the Moore Action have exchanged formal discovery requests;
7  PetSmart produced nearly 9,000 pages of documents, and the Moore Plaintiffs have
8  produced nearly 1,000 pages of documents.  (Decl. Michelle Heverly, ECF No. 6-1 at 2.)
9  PetSmart has conducted four depositions of the Moore Plaintiffs, and the Moore
10 Plaintiffs have deposed the persons most knowledgeable on several subjects.  (Id.)  One
11 of the persons most knowledgeable, Shane Burris, was deposed in both the Moore
12 Action and the Negrete Action.  (Id.)

## STANDARD

"[T]he first to file rule is 'a generally recognized doctrine of federal comity'" under which "a district court [may] decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Apple Inc. v. Psystar Corp., 658 F.3d 1150, 1161 (9th Cir. 2011) (quoting Pacesetter Sys. Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982)).  "[W]hen two cases involving the same parties and issues are filed in two different federal districts, the first-to-file rule permits the second district court to exercise its discretion to transfer, stay or dismiss the second suit in the interests of efficiency and judicial economy." AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1156 (9th Cir. 2007) (Ferguson, J., concurring) (citing Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997)).  The rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." Apple Inc., 658 F.3d at 1161 (quoting Pacesetter Sys. Inc., 678 F.2d at 95).

1  "The most basic aspect of the first-to-file rule is that it is discretionary . . . .'" Alltrade,
2  Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991) (citing Kerotest Mfg. Co. v.
3  C-O-Two Fire Equip. Co., 342 U.S. 180, 183-84 (1952)).

**ANALYSIS**

### A.     Chronology of the Two Actions

Where duplicative actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction generally should proceed with the litigation. Pacesetter Sys., Inc., 678 F.2d at 95. Here, the Moore Action was originally filed in state court on May 23, 2012, and the Northern District of California gained jurisdiction of the case on July 9, 2012. (ECF No. 6-9.) The Negrete action was originally filed in state court on September 20, 2012, and this Court gained jurisdiction on June 14, 2013. (ECF No. 1.) Accordingly, it is clear that the Northern District of California is the first court to acquire jurisdiction and, thus, should proceed with the litigation.

### B.     Similarity of the Parties

The Court must next consider the similarity of the parties. The first-to-file rule does not require strict identity of the parties but, rather, substantial similarity. Adoma v. Univ. of Phoenix, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) (citing Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006)). Indeed, "courts routinely recognize that [the parties] need not be identical in the two actions." Wright v. RBC Capital Mkts. Corp., CIVS093601FCDGGH, 2010 WL 2599010 (E.D. Cal. June 24, 2010) (citing Biotronik, Inc. v. Guidant Sales Grp., No. 09–442–KI, 2009 WL 1838322 (D. Or. June 22, 2009) ("The parties . . . need not be exactly identical; there may be additional parties . . . .")).

"The rule is satisfied if some parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." Medlock v. HMS Host USA, Inc., CV F 10-2167 LJO GSA, 2010 WL 5232990 (E.D. Cal. Dec. 16, 2010) (quoting Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc., 544 F. Supp. 2d 949, 959, n.6 (N.D. Cal. 2008)).  In the context of a class action, the court compares the potential classes rather than the named representatives. Adoma, 711 F. Supp. 2d at 1147 (citing Ross v. U.S. Bank. Nat'l Ass'n, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008)).

In the present case, there is substantial similarity between the parties.  The named defendant in the Moore Action, PetSmart, is one of two named defendants in the Negrete Action.  Additionally, the proposed classes for the two actions are substantially similar.  The putative "groomer" class in the Moore Action is defined as "[a]ll current and former non-exempt employees of PetSmart who performed work in California as a groomer from and after August 7, 2008 ("Groomer Class")."  (ECF No. 6-8 at 14).  The putative class in the Negrete Action is defined as "all persons employed as a groomer or pet groomer who worked for Defendants at any California store location within four years prior to the filing of this complaint until the date of certification."  (ECF No. 1-6 at 4).  Because the Negrete Action was filed in September 2012, the putative class in the Negrete Action includes all persons employed by PetSmart as a groomer beginning in September 2008.  Furthermore, in light of Plaintiff's statement of non-opposition, the parties to the Negrete Action agree that they are substantially similar to the parties in the Moore Action.

The Court thus finds that the potential classes are substantially similar.

### C.    Similarity of the Issues

Finally, the Court must consider whether the issues in the Negrete Action are substantially similar to those in the Moore Action.

6

As with the parties, the first-to-file rule does not require that the issues in the two actions be identical. Adoma, 711 F. Supp. 2d at 1147 (citing Inherent.com, 420 F. Supp. 2d at 1097). "Rather, the issues need only be 'substantially similar.'" Id. (citing Inherent.com, 420 F. Supp. 2d at 1097).

Here, both actions arise from PetSmart's alleged California Labor Code violations with regard to employees working as pet groomers, including failure to compensate groomers for all hours worked, furnish each employee with accurate itemized wage statements, pay minimum wages and provide appropriate meal and rest periods. In short, both actions assert identical violations of the California Labor Code, and other California Code sections, which are based on the same practices occurring during the same time period. See Herrera v. Wells Fargo Bank, N.A., C 11-1485 SBA, 2011 WL 6141087 (N.D. Cal. Dec. 9, 2011) (finding case involving FLSA claims substantially similar to case involving California claims when claims alleged same practices occurring at same time). The similarity of these allegations would require the court to make similar determinations. While there is some difference in the claims and issues in the two cases, as the Moore Action also involves claims for violations of California's Fair Employment and Housing Act for the individual plaintiffs in that action, this distinction is not dispositive, as the claims brought on behalf of the putative groomer classes in each action are substantially similar, if not identical. Moreover, Defendants and Plaintiff agree that the issues are similar.

Accordingly, the Court finds that the issues in the Negrete Action and the Moore Action are substantially similar.

### D.  Exceptions

Even assuming that the three requirements of the first-to-file rule are satisfied, the Court must consider whether an exception to the rule applies.

///

"The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, . . . anticipatory suit, and forum shopping." Alltrade, Inc., 946 F.2d at 627-28.  Plaintiff does not contend, and the Court does not find, that any of these concerns are implicated in the present case.

Additionally, the first-to-file rule is rooted in principles of comity.  See supra.  "The purpose of the comity principle is of paramount importance.  The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." Church of Scientology of Cal. v. U.S. Dep't of Army, 611 F.2d 738, 750 (9th Cir. 1979) (citing Great N. Ry. Co. v. National Rr. Adjustment Bd., 422 F.2d 1187, 1193 (7th Cir. 1970)).  In this case, given the overlap in the claims and parties, Plaintiff's consent to the motion (ECF No. 8), and the potential expenditure of scarce judicial resources to adjudicate nearly identical cases, the equities in this case weigh in favor of transfer.

Defendants' Motion for Change of Venue is therefore GRANTED.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion for Change of Venue is GRANTED (ECF No. 6);
2. The case is TRANSFERRED to the Northern District of California;
3. The Clerk of this Court is directed to close the case.

IT IS SO ORDERED.

Dated:  September 9, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT